UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

STEPHEN D. NEWMAN,

                Petitioner,

    v.

TIMOTHY WENGLER,

                Respondent.

Case No. 1:11-cv-00520-LMB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Petitioner Stephen D. Newman's Petition for Writ of Habeas Corpus (Dkt. 1). Respondent has filed an Answer and Brief in Support of Dismissal (Dkt. 14). Petitioner has filed a Reply (Dkt. 17), and Respondent has filed a Sur-reply (Dkt. 18). The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on June 28, 2012. (*See* Dkt. 13.)

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the

**MEMORANDUM DECISION AND ORDER  1**

following Order dismissing the Petition with prejudice on the grounds that Petitioner's

Fourth Amendment claim is not cognizable in federal habeas proceedings because he

received a full and fair opportunity to litigate that claim in state court. *See Stone v.*

*Powell*, 428 U.S. 465, 494 (1976).

## BACKGROUND

After a jury trial in Idaho state court in July of 2008, Petitioner was convicted of

one count of attempted rape. The facts surrounding the initial detention of Petitioner, the

search of his vehicle, and the evidence obtained and presented at trial are not in dispute.

**1.      Petitioner's Arrest and the Search of His Vehicle**

The following recitation is taken primarily from Petitioner's Memorandum of

Points and Authorities in support of his Petition:

> On July 27, 2007, Boise resident Gretchan Heller
> responded to an ad for an iPod in the "free" section of
> Craigslist. A reply at around 3:00 p.m. that day from a person
> calling himself Terry explained that the iPod was his wife's,
> that she had cheated on him, and that it was therefore his right
> to give it away. At about 10:00 p.m., Ms. Heller received
> another message from "Terry" stating that, if she were still
> interested in the free iPod, he would send directions to its
> location. In a follow-up message, he told her to go to a park at
> Eagle and McMillan. She was told that she would find a Porta
> Potty there and that the iPod would be inside, on top of a
> towel holder.
>
> Ms. Heller believed that something suspicious was
> going on. She and her husband traveled to the area of the park
> to see if there was a vehicle waiting and, indeed, she saw one
> in the park. At that point, the two of them went to an
> Albertson's parking lot near the park and called the police.

**MEMORANDUM DECISION AND ORDER  2**

Boise Officer Cory Bammert responded to the Albertson's lot at 11:52 p.m. A backup unit of Officers Abercrombie and Coltrin arrived shortly thereafter. After hearing from Ms. Heller, Bammert and the backup officers went into the park and observed a maroon SUV with its lights off. Bammert checked inside a nearby Porta Potty, but found no iPod.

Officer Bammert then did a passenger-side approach to the SUV. The SUV had tinted windows and Bammert did not believe it was occupied. He, nonetheless, knocked on the window. The driver, later identified as petitioner, rolled down the window. Petitioner stated that he had been parked for an hour and a half working on his computer. Although it was a hot July night, he was wearing a knit cap. Bammert saw a pair of ski gloves on the passenger seat, which petitioner said had been there a while.

After a short conversation, Officer Bammert told petitioner to step out of the car in order to place him under arrest for being in the park after hours, in violation of Boise Municipal Code §§ 13-03-05 to 13-03-10. Petitioner was ordered out of the car and placed under arrest solely for that offense. Bammert was quite candid about this, explicitly admitting that he did not arrest petitioner based on probable cause to believe that petitioner had committed an attempted rape or kidnaping or any such crime. Indeed, as Bammert's testimony would indicate, he personally did not believe he had such probable cause.[1]

Officer Bammert testified that petitioner was under arrest from the moment he left his vehicle. At that point,

---

[1] An officer's belief that he or she lacks probable cause is not determinative of the legality of a search. "In the mine run of Fourth Amendment cases . . . the subjective motivations of the individual officer involved are irrelevant in determining whether the circumstances objectively justified the action taken or the intrusion occasioned." *United States v. McCarty*, 648 F.3d 820, 832 (9th Cir. 2011) (noting that actual motivations of officers matter only with respect to "'special-needs and administrative-search cases'") (quoting *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080 (2011)).

**MEMORANDUM DECISION AND ORDER  3**

Officer Abercrombie was at the rear of the vehicle and Officer Coltrin was on the driver's side. On his way to meet petitioner by the driver's door, Bammert met Abercrombie at the rear of the SUV, where Abercrombie told him that petitioner was sticking something behind the seat. Bammert then observed petitioner placing something between the seats with his right hand, although he did not testify that he identified the item. When he reached petitioner on the driver's side, Bammert asked what he had placed between the seats. Petitioner did not say at first.

Petitioner exited the car. Bammert handcuffed him and sat him on the curb. Having secured him away from his vehicle on a charge of violating the Boise Municipal Code provision, and not before, two of the officers searched the vehicle incident to that arrest. The third watched over petitioner as the other officers conducted their search.

. . . .

Having placed petitioner under arrest, handcuffed him, and secured him in a location away from the SUV, the two officers entered the vehicle. They found a kitchen knife under the ski gloves that were located on the front passenger seat. Officer Bammert stated that he had not seen the knife until the search incident to arrest. The officers seized a pellet gun located behind the driver's seat. It was not loaded. The officers also observed that the back seat of the SUV was down, where they found a man's belt.

In addition, the officers found and seized the laptop computer, which petitioner had told them he worked on before his arrest. The laptop contained numerous electronic files that the prosecution ultimately introduced into evidence at trial to tie petitioner to the free iPod ad, and to support its claim that he had intended to commit a rape on July 27, 2007. Again, Officer Bammert was quite candid about his thinking at the time of the seizure, admitting that he believed it might contain evidence relating to a crime other than the predicate crime for the arrest, such as attempted kidnaping or attempted

**MEMORANDUM DECISION AND ORDER  4**

rape, which he then lacked probable cause to believe petitioner had committed. He agreed that he seized the computer "so that it could be looked at to see whether it had evidentiary value."

In addition to the pellet gun, laptop, belt, gloves, and knife, the officers also seized pieces of paper with notations on them.

(Pet. and Memo., Dkt. 1, at 19-21)[2] (internal citations and footnotes omitted).

**2.     The Evidence Obtained from the SUV**

A later search of Petitioner's computer (executed pursuant to a warrant), as well as

the handwritten notes found in Petitioner's SUV, revealed much about Petitioner's

activities that day, as well as his intent with respect to Ms. Heller that night:

[There were] two movies downloaded from the seized computer depicting petitioner and a woman engaged in sex acts on what appeared to be two separate occasions. During the defense case [at trial], the woman depicted in the video as Ruby testified that her participation in the role-playing was entirely consensual. In the video, petitioner and Ruby role-play long rape scenes. Petitioner is seen and heard berating, beating, and (seemingly) forcibly penetrating Ruby. In addition to the sexual acts, petitioner threatens Ruby with a knife.

In e-mails between petitioner and the woman he calls Ruby, he told her that he would love to rape her and asked how rough he could get with her. In another, he described a fantasy in which he rapes a college student whose car has broken down.

---

[2] The page numbers listed in the Petition and supporting memorandum, as well as Petitioner's Reply, are different from the electronic page numbers assigned by CM/ECF. For convenience, the Court will refer to the electronically assigned page number.

**MEMORANDUM DECISION AND ORDER  5**

A detective described commercially produced videos that were located on the laptop, . . . [including] a video in which a woman walks into a bike repair shop and two men sexually assault her in various ways. That video had an identifier at the bottom of the screen: www.rapeserver.com.

[On the computer, police discovered] various e-mails petitioner apparently sent from his laptop and Internet searches he conducted during the twenty-four hours prior to his arrest. . . .

In the early hours of July 27, 2007, "Sara" answered from petitioner's computer a Craigslist ad for someone looking for a female roommate. In the e-mail, Sara asked whether she could come see the apartment. Sara also sent an e-mail to another woman looking for a roommate. Later, Sara inquired about a prom dress that was listed for sale. Next, Sara sent a message asking whether a wedding dress that had been listed was still available. Sara sent another message regarding yet another wedding dress a short time later.

A few hours later, shortly before 9:00 a.m. on July 27, 2007, petitioner checked responses to an ad he had posted regarding free therapy. He then sent another message checking on the availability of one of the wedding dresses. He then accessed one of the videos on the laptop. At around 9:30 a.m., Craigslist sent him a message confirming that his iPod listing had been posted. In some of the correspondence relating to the iPod, petitioner used an e-mail address at "anonymous speech.com," which would make it difficult for the government to locate the person attached to the address.

A person named Amanda responded to the iPod ad and, shortly thereafter, petitioner conducted a search on Myspace for [her] e-mail address . . . . Ms. Heller responded to the iPod at about 3:30 p.m. Petitioner also conducted a search for the name "Carly Bovee," which was the name of one of the people selling a wedding dress. Later that day, he checked Amanda's Yahoo.com profile.

**MEMORANDUM DECISION AND ORDER  6**

Amanda e-mailed at 4:48 p.m. to ask whether she could pick up the free iPod. Petitioner conducted additional people searches between 5:48 and 6:19 p.m. At 6:18 p.m., he searched for an address . . . .

Petitioner sent an e-mail to Ms. Heller at 10:03 p.m. in which he said, "I know it's late, I'll wait 15 minutes." He sent a similar message to Amanda a short time later. At 10:06 p.m., he sent Ms. Heller a message saying no one had claimed the iPod. She wrote back to say that she would love to have it. He then conducted searches to try to identify her, finding pictures of her on Myspace. He eventually sent her the e-mail, ultimately provided by her to the police, which gave directions to the park and told her where she could find the iPod.

Police also identified various Google searches conducted on petitioner's computer in the days before his arrest, which included the following: Boise student housing (which corresponded to one of the ads for a roommate), the definition of sexual assault, the average sentence for rape, rapist, details of rape, as well as numerous other searches related to rape, rape statistics, and air guns.

(*Id*. at 25-26) (internal citations omitted).

The documents seized from the SUV were part of a flight itinerary with handwritten notes on them. "Some of the handwritten notations on the seized documents appeared to be license plate numbers." (*Id*. at 13.) For example, one of the notes contained the words "one girl" along with what looked like a license plate number (it began with the 1A code for Ada County), and the description "90s Black Taurus." (State's Lodging A-1 at 86.) "[I]nvestigating detectives came to suspect, after identifying individuals and addresses associated with those numbers and conducting interviews, that

**MEMORANDUM DECISION AND ORDER  7**

petitioner had been following young women to their homes." (Pet. and Memo. at 13.)

**3.      Motions to Suppress**

Before trial, Petitioner moved to suppress the evidence obtained from the SUV.
(State's Lodging A-1 at 39-40.) The trial court held an evidentiary hearing, at which
Officers Bammert and Abercrombie testified. (State's Lodging A-3 at 2, 59.) Petitioner
asked questions of both officers.

Petitioner argued primarily that the arrest itself was unlawful (a claim he does not
raise in his federal Petition). (State's Lodging A-1 at 39-40.) However, Petitioner also
argued that even if the arrest was lawful, the search itself was not. (State's Lodging A-3
at 36-37, 84-88.) The state argued that, under then-applicable Fourth Amendment
principles, the arrest was lawful and the search of the SUV was constitutional as a search
incident to that arrest. (*Id*. at 96-97.) *See New York v. Belton*, 453 U.S. 454, 460 (1981)
("[W]hen a policeman has made a lawful custodial arrest of the occupant of an
automobile, he may, as a contemporaneous incident of that arrest, search the passenger
compartment of that automobile.") (footnote omitted), *limited by Arizona v. Gant*, 556
U.S. 332 (2009).

Petitioner noted that the Supreme Court had granted certiorari in *Arizona v. Gant*,
which involved the proper scope of a search incident to an arrest of a recent occupant of a
vehicle and in which the Court would eventually limit the *Belton* rule. (State's Lodging
A-3 at 36.) The trial court held that until the Supreme Court revisited it, the *Belton* rule

**MEMORANDUM DECISION AND ORDER  8**

continued to apply. (State's Lodging A-1 at 66.) Therefore, the court denied Petitioner's

motion to suppress the evidence obtained from the search of the SUV.

However, the trial court noted that, apart from the initial search of the vehicle,

which turned up the knife, belt, and pellet gun, the "issue of the seizure and subsequent

search of the defendant's laptop computer, as an incident of his arrest for being in the

park after dark, has not been fully argued." (*Id*.) The court expressed "grave misgivings"

about the detectives' search of the computer's storage drives "on the theory that they

could do so incident to [Petitioner's] arrest," and allowed the parties to submit additional

briefing on that issue. (*Id*. at 66, 67.)

Petitioner then filed a supplemental motion to suppress, arguing that the police

"lacked probable cause to seize either the computer or the miscellaneous papers found in

the vehicle." (*Id*. at 71-72.) Petitioner asserted that "[t]hough the ensuing warrantless

search was justified as an incident to arrest, the officers had no probable cause allowing

for the seizure of the defendant's laptop computer because it was not immediately

apparent that the laptop was associated with any criminal conduct." (*Id*. at 77) (internal

quotation marks omitted). Petitioner noted that one of the officers stated "he had no

knowledge that the computer contained evidence of criminal wrongdoing, but seized it

simply to see what it might contain." (*Id*. at 78.) Petitioner also contended that the seizure

of the documents with Petitioner's handwritten notes was not supported by probable

cause. (*Id*. at 83-84.) Petitioner did not challenge the eventual search of the computer,

**MEMORANDUM DECISION AND ORDER  9**

stating that "in the instant case the defendant challenges the *seizure* of his laptop computer, rather than its search." (State's Lodging A-1 at 81.)

The trial court held another evidentiary hearing to consider the supplemental motion to suppress. (State's Lodging A-2 at 1.) At this hearing, Petitioner called Officer Bammert as a witness, but his testimony related to the time of Petitioner's arrest, an issue not raised in Petitioner's habeas petition. (*Id*. at 2-19.) Petitioner does not claim that he requested any other witnesses or any further factual development, and he does not contend that he was prohibited from developing the record at this second evidentiary hearing with the respect to the seizure of the computer, the seizure of the documents, or the delay between the seizure and later search of the computer.

Petitioner argued to the trial court that the incriminating nature of the computer was not evident at the time of the search and, therefore, "without regard to validity of the search incident to the arrest doctrine the officers should not have seized the computer." (*Id*. at 20.) *See Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (stating that officers may seize an object without a warrant under the plain-view doctrine "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object"). Petitioner's argument included an extensive dialogue with the trial judge. During this dialogue, in response to the judge's questions, Petitioner acknowledged that before Petitioner told the police that he had been working on his computer, Ms. Heller had told

**MEMORANDUM DECISION AND ORDER  10**

them she received an email with instructions on how to retrieve the iPod. (State's

Lodging A-2 at 28.) Petitioner nonetheless argued that the search was invalid for lack of

probable cause:

| The Court: | Don't you have a situation here where you have a witness that has told the officers that she is there because of e-mails that she has exchanged relating to an iPod that's going to be in one of these porta potties so that there's correspondence that has occurred that utilizes a computer? |
|---|---|
| | And the defendant is present in his car with a computer when the officers approach. They then see in plain view, when they approach the car, these various items in the car. He's got the stocking cap on. He's got gloves. It's a very warm night. And he also has a computer that he apparently closes very soon after he realizes that it's the police officers there. |
| | What's unreasonable about the police believing—given the totality of those facts—that this computer could have been involved in bringing this individual to the scene for the potential commission of a rape? |
| [Defense Counsel]: | Well, I certainly understand your question, and we gave a lot of thought to that kind of issue. And I think it's important to separate—always in this situation—what the situation on the scene was and what we might now be looking at. Because they did seize the computer and later on they searched the computer, and it becomes an issue in our case. But at that time, yes, the witness, [Ms. Heller], said that she had had e-mail correspondence with this individual. "We talk about the porta potties and the iPod." |
| | Then [the officers] went over there and they saw . . . [Petitioner] in his vehicle, and he has the items that you suggest. But they didn't—but there was nothing about that—I mean, they questioned him. They didn't have information that he had sent her e-mails. He didn't admit that he had. They |

**MEMORANDUM DECISION AND ORDER  11**

didn't have information that he had advertised an iPod. They suspected that he could have and that he could have used that computer, if he was even the person who had done this. They didn't know any of that. They didn't know any of that. Because if they had, they would have behaved differently. They would have arrested him for a more serious matter than being in the park after dark, for example. They just didn't know. . . .

They couldn't look at that computer sitting on the seat and say, "That's evidence of a crime," any more than if it was my computer, your computer, anybody's computer. It's just a computer. And therefore, I think that's the reason why they couldn't do it.

(*Id*. at 27-29.) Petitioner focused his oral argument on the seizure of the computer, not the documents. The court took the matter under advisement.

The trial court next held a hearing on the government's notice of intent to introduce, pursuant to Idaho Rule of Evidence 404(b), evidence obtained from Petitioner's computer. (State's Lodging A-3 at 104.) The government called two detectives about the search of the computer, one of whom Petitioner cross-examined. (*Id*. at 108-203; 204-14.) Though Petitioner did not call a witness at this hearing, he does not contend that he was prohibited from doing so.

After hearing argument from the state and from Petitioner, the court ruled from the bench on Petitioner's supplemental motion to suppress, stating that the computer would "not be suppressed on either the basis that the computer was improperly seized or that the computer was improperly searched." (*Id*. at 254-55.) The court did not explicitly mention the seized documents other than to determine that they were admissible in evidence as

**MEMORANDUM DECISION AND ORDER  12**

more probative than prejudicial. (*Id*. at 254.)

## 4.   Proceedings on Appeal

After the jury convicted Petitioner of attempted rape, but before he filed his opening brief on direct appeal, the United States Supreme Court decided *Arizona v. Gant*, 556 U.S. 332 (2009). Without purporting to overrule *Belton*, the Court in *Gant* rejected a "broad reading of *Belton*" with respect to vehicle searches incident to arrest, holding that an officer may "conduct a vehicle search when an arrestee is *within reaching distance of the vehicle* or it is reasonable to believe the *vehicle contains evidence of the offense of arrest*." *Id.* at 346 (emphasis added). It is undisputed that Petitioner was handcuffed away from the vehicle, under arrest for being in the park after dark, at the time the officers searched the SUV.

In his opening brief on appeal, Petitioner challenged the trial court's denial of his first motion to suppress, arguing that the search was invalid under *Gant*. (State's Lodging B-1 at 12-13.) Petitioner asked that his conviction be reversed and the case remanded for further proceedings. He did not challenge the trial court's denial of his supplemental motion to suppress.

In its answering brief, the government argued that even if the search of the SUV was not a valid search incident to arrest under *Gant*, the evidence was still properly admitted. (State's Lodging B-2 at 5.) The government argued, among other things, that the vehicle search could be upheld under the automobile exception to the warrant

**MEMORANDUM DECISION AND ORDER  13**

requirement, which allows the search of a vehicle if there is probable cause to believe that it contains evidence of a crime. (*Id*. at 23-25.)

Petitioner argued in his reply brief that the automobile exception did not apply because the officers did not have probable cause to believe the SUV contained evidence of a crime: "[The officers] had no way to connect [Petitioner] with the supposed IPod [sic] in the porta potty or the e-mails until they searched his vehicle, seized his computer, and downloaded materials from it." (State's Lodging B-3 at 11.) Petitioner contended that "[e]ven if it could be argued that prior to the search there was probable cause to justify the issuance of a search warrant to search [Petitioner's] vehicle for evidence of some crime, there was at that time simply no conceivable probable cause to authorize the seizure of [Petitioner's] laptop computer." (*Id*. at 13-14). This is the same argument Petitioner raised in his supplemental motion to suppress. Petitioner did not raise in his reply brief the issue of the seizure of the documents or the delay between the seizure and the later search of the computer. (*Id*. at 10-14.)

## 5.   The Decision of the Idaho Court of Appeals

The Idaho Court of Appeals affirmed Petitioner's conviction. The court did not address whether the search of the SUV was valid as a search incident to arrest under *Gant*, but affirmed on a different ground. Noting that it had the authority to uphold the search on grounds not argued by the prosecutor or asserted by the officers,[3] the court

---

[3] The court of appeals stated:

**MEMORANDUM DECISION AND ORDER  14**

agreed with the government that the search of the SUV was supported by probable cause

and was therefore valid under the automobile exception to the warrant requirement.

(State's Lodging B-5 at 7.) Petitioner does not argue otherwise in his Petition.

With respect to the seizure of the computer, the court made the following factual

findings:

> [I]n this case, there is a direct nexus between the computer
> and the suspected criminal activity. [Petitioner] admitted to
> officers that he was sitting in his car working on his computer
> around the same time that the victim reported receiving
> e-mails directing her to a portable restroom in the park. The e-
> mails triggered the investigation, and were the very means by
> which the victim was lured to the park in the first place. The
> suspicious circumstances of this case—[Petitioner's] dress,
> demeanor, and gun—coupled with [Petitioner's] admission to
> recently working on his laptop computer, created a direct
> nexus between the suspicious e-mails and [Petitioner's]
> computer.

(*Id.*) The court of appeals concluded that "[b]ecause the search of [Petitioner's] vehicle

was supported by probable cause to believe that evidence of a crime would be discovered,

---

> During the proceedings below, the prosecutor did not argue
> the . . . automobile exception to justify the search. However, on
> appeal, this Court is not limited by the prosecutor's argument or
> absence thereof. *See State v. Bower*, 135 Idaho 554, 558, 21 P.3d
> 491, 495 (Ct. App. 2001). Further, an officer's explanation for the
> search is not controlling. *State v. Shepard*, 118 Idaho 121, 124, 795
> P.2d 15, 18 (Ct. App. 1990). The lawfulness of a search is to be
> determined by the court, based upon an objective assessment of the
> circumstances which confronted the officer at the time of the
> search. *Id.*

(State's Lodging B-3 at 4 n.1.)

**MEMORANDUM DECISION AND ORDER  15**

and because the computer could reasonably be considered to be evidence of a crime, . . . the seizure of the computer was proper under the Fourth Amendment." (*Id*.) The court did not address the seizure of the documents or the delay in the computer search, presumably because Petitioner did not discuss either issue in his opening or reply brief.

Petitioner next filed a petition for rehearing in the Idaho Court of Appeals, arguing that the court should not have decided this new Fourth Amendment issue on appeal because, although Petitioner conceded that the facts relevant to the "search incident to arrest" issue were not disputed, he had never conceded any facts relevant to "the probable cause issue, which was first put in play by the state's opposing brief on appeal." (State's Lodging B-7 at 4.)

Petitioner also claimed that "[t]he critical constitutional issue of the validity of the search warrant for the laptop search has never been decided by an Idaho court." (*Id*. at 5.) However, Petitioner's supplemental motion to suppress expressly *disavowed* a challenge to the search of the computer. (State's Lodging A-1 at 81.) In any event, Petitioner's argument that no Idaho court addressed the issue is plainly refuted by the transcript of one of the evidentiary hearings. The trial court held that the computer would "not be suppressed on either the basis that the computer was improperly seized *or that the computer was improperly searched*." (State's Lodging A-3 at 254-55) (emphasis added). Because the search of the computer was conducted pursuant to a warrant, the trial court necessary held that the search warrant was valid.

**MEMORANDUM DECISION AND ORDER  16**

The petition for rehearing also asserted that the officers lacked probable cause to seize the documents from the SUV—an issue he had not raised in his appellate briefing.[4] (State's Lodging B-7 at 5.) Petitioner further argued that the resolution of his case required factual findings by the trial court, particularly on the question whether the "laptop had the capacity to send emails" to Ms. Heller on the night of the incident. (*Id*. at 11.) Petitioner requested a reversal or, alternatively, an opportunity for "full briefing on the probable cause question." (*Id*. at 5.)

The Idaho Court of Appeals denied the petition for rehearing without comment. (State's Lodging B-8.) Petitioner then filed a petition for review in the Idaho Supreme Court, in which he reiterated the arguments he had raised in the petition for rehearing. (State's Lodging B-10.) The Idaho Supreme Court denied the petition.

**6.     The Federal Petition**

Plaintiff filed his federal Petition on October 28, 2011. Petitioner asserts a single claim in his Petition: that the trial court "prejudicially violated petitioner's right to be free of unlawful searches and seizures, guaranteed him by the Fourth and Fourteenth

---

[4] Petitioner also claimed in his petition for rehearing that "[t]he critical constitutional issue of the validity of the search warrant for the laptop search has never been decided by an Idaho court." (*Id*. at 5.) If this contention were true, it would hardly be surprising, as Petitioner's supplemental motion to suppress expressly *disavowed* a challenge to the search of the computer. (State's Lodging A-1 at 81). But Petitioner's assertion that no Idaho court addressed the issue is plainly refuted by the transcript of one of the evidentiary hearings. The trial court held that the computer would "not be suppressed on either the basis that the computer was improperly seized *or that the computer was improperly searched*." (State's Lodging A-3 at 254-55) (emphasis added). Because the search of the computer was conducted pursuant to a warrant, the trial court necessarily held that the search warrant was valid.

**MEMORANDUM DECISION AND ORDER  17**

Amendments, when it refused to suppress all evidence garnered from a search of his laptop computer." (Pet. and Memo. at 12.) Within that claim are three "sub-claims": (1) that "the officers who searched petitioner's vehicle lacked probable cause to seize the documents they found therein"; (2) that "the officers lacked probable cause to seize the computer"; and (3) that "the officers detained the computer for an unreasonably lengthy period of time before applying" for a search warrant and, therefore, the search of the computer was unconstitutional. (*Id*. at 28.)

## DISCUSSION

### 1.      Standard of Law: *Stone v. Powell*

The threshold issue for a Fourth Amendment claim presented in a federal habeas corpus petition is whether the state provided the petitioner an opportunity for full and fair litigation of his claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976). Under *Stone*, if the federal district court determines that full and fair litigation of the claim took place in state court, then it cannot grant habeas corpus relief on the ground that the evidence was obtained in violation of the Fourth Amendment. *Id*. The *Stone* rule is based on the principle that the exclusionary rule is "not a personal constitutional right" but is instead a practical way to deter police conduct that violates the Fourth Amendment. *Id*. at 486. The social costs of the exclusionary rule are heavy: the rule "deflects the truthfinding process and often frees the guilty." *Id*. at 490. On collateral review of a criminal conviction, "the contribution of the exclusionary rule, if any, to the effectuation of the

**MEMORANDUM DECISION AND ORDER  18**

Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 494-95.

To determine whether a petitioner had a full and fair opportunity to challenge his Fourth Amendment claim in state court, a federal district court "inquire[s] into the adequacy and fairness of available state court procedures for the adjudication of Fourth Amendment claims." *Sanna v. Dipaolo*, 265 F.3d 1, 8 (1st Cir. 2001). If the court determines that the state court procedures are adequate, the inquiry ends there. *Id.* at 8-9. That is, "[s]o long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of such a set of procedures, a federal habeas court lacks the authority, under *Stone*, to second-guess the accuracy of the state court's resolution of those claims." *Id.* at 9. Stated another way, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Petitioner bears the burden of establishing that the state courts did not consider his Fourth Amendment claim fully and fairly. *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977).

Petitioner argues that the *Stone* doctrine does not apply for two reasons. First, he claims that because the Idaho Court of Appeals upheld the search on a different ground than the trial court, he was denied a full and fair opportunity to litigate his Fourth Amendment claim in state court. Second, he claims that even if he did receive such an

**MEMORANDUM DECISION AND ORDER  19**

opportunity, *Stone* is no longer good law following the passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). The Court addresses both arguments in turn.

**2.      Application of *Stone v. Powell* to Petitioner's Fourth Amendment Claim**

In determining whether Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim in state court, it is helpful to clarify what Petitioner is *not* arguing. Petitioner is not arguing that the initial search of the SUV was invalid; indeed, Petitioner assumes that "the search of his vehicle was justifiable under the automobile exception to the warrant requirement, and that the officers, therefore, were lawfully inside the vehicle when they located the documents containing the handwritten notations and the laptop computer." (Pet. and Memo. at 28.) Thus, he does not challenge the seizure of the knife, belt, or pellet gun. Rather, he argues that the state courts either did not address, or did not find crucial facts related to, his three sub-claims: (1) whether there was probable cause to seize the documents; (2) whether there was probable cause to seize the computer; and (3) whether the computer was held for an unreasonable length of time before it was searched. (*Id*.) As the Court explains below, however, Petitioner received a full and fair opportunity to litigate all three of these issues in the state trial court, the state court of appeals, and the state supreme court.

As can be seen from the transcript of the hearing on Petitioner's supplemental motion to suppress, the trial court was actively engaged with Petitioner's argument that,

**MEMORANDUM DECISION AND ORDER  20**

even if the officers could legally search the vehicle, they lacked probable cause to seize the computer. (State's Lodging A-2 at 27-29.) The court's questions were focused on the suspicious circumstances leading up to the search of the SUV: An ad for a free iPod in a porta potty, a car waiting by that porta potty, in which a man—who admitted working on his laptop computer—is wearing a knit cap on a hot summer night and in which the officers find a knife, a belt, and a pellet gun. (*Id.*) The judge fully considered Petitioner's arguments but denied the motion. That the trial court ruled from the bench without elaborate analysis does not mean that Petitioner was denied full and fair consideration of his Fourth Amendment claim regarding the seizure of the evidence; rather, the transcript reflect the full extent of argument and Petitioner's opportunity to present all relevant issues.

Furthermore, Petitioner has not shown that he was prohibited from fully developing the facts that he now complains are missing from the record. For example, Petitioner contends that he should have been able to develop facts supporting his argument that the delay between the seizure and search of the computer was too long, thus rendering the search invalid notwithstanding that it was executed pursuant to a warrant.

But Petitioner filed a supplemental motion addressing the issue of probable cause to seize the computer and documents. In this motion Petitioner could have challenged the length of time between the seizure and the search of the computer, but he did not. In fact,

**MEMORANDUM DECISION AND ORDER  21**

he explicitly stated that he was *not* challenging the search of the computer. (State's Lodging A-1 at 81) ("[I]n the instant case the defendant challenges the *seizure* of his laptop computer, rather than its search . . . ."). Petitioner was also allowed a second evidentiary hearing, at which he presented evidence by calling a witness (albeit to testify about an unrelated matter). (State's Lodging A-2 at 2-19.) He could have developed facts relevant to his sub-claims, but, again, he did not. Yet another hearing was held on the government's motion to introduce Rule 404(b) evidence, and it was only after argument at that hearing that the trial court determined that the computer was neither unlawfully seized nor unlawfully searched. (State's Lodging A-3 at 254-55.)

The key question in this case is whether Petitioner had the *opportunity* to litigate his sub-claims. *See Ortiz-Sandoval*, 81 F.3d at 899. Petitioner obviously had that opportunity in the trial court. That he did not develop the facts related to his sub-claims is not the question; Petitioner has failed to establish that he was *prevented* from doing so. *See Yakovac v. Underwood*, 2010 WL 3735708, *6 (D. Idaho Sept. 4, 2010) (unpublished) ("Here, although Petitioner's trial counsel did not file a motion to suppress in state court on Fourth Amendment grounds, Petitioner has not shown that her counsel was deprived of an opportunity to do so. Therefore, the Court must dismiss Petitioner's habeas claim as not cognizable under *Stone*.")

Petitioner also had the chance to argue his sub-claims to the Idaho Court of Appeals. But in his opening brief, Petitioner argued only that the search incident to the

**MEMORANDUM DECISION AND ORDER  22**

arrest theory no longer justified the search—which was the issue of his first motion to suppress. He did *not* argue that the trial court's denial of his *supplemental* motion to suppress—which challenged the seizure of the evidence—was erroneous. Because the supplemental motion was decided adversely to Petitioner, he could have appealed that decision. He chose, however, to rely solely on *Gant*, without preserving the issue of the seizure of the evidence. Petitioner thus decided not to raise in his opening brief on appeal the very claim that he now wants this Court to address: whether the officers had probable cause to seize the computer or the documents. (*See* Pet. and Memo. at 28.)

In his reply brief on appeal, Petitioner had another opportunity to argue his claim—including all three sub-claims. But he argued only that the seizure of the computer was not justified by an exception to the warrant requirement. (State's Lodging B-3 at 10-14.) He did not argue anything similar with respect to the documents until he filed his petition for rehearing, nor did he challenge the delay in searching the computer. That Petitioner chose not to include these arguments in his reply brief is not the fault of any state court.

Petitioner acknowledges that the Idaho Court of Appeals addressed the seizure of the computer. However, he argues that the court did so without an adequate factual basis because "[w]hat was or was not immediately apparent to the Boise police officers with respect to petitioner's laptop computer is currently unknown." (Pet. at 44.) Petitioner criticizes the court of appeals for finding probable cause without any evidence of whether

**MEMORANDUM DECISION AND ORDER  23**

the laptop was capable of sending emails to Ms. Heller. Notably, Petitioner identified this supposedly crucial missing fact only in his petition for rehearing. He did not raise it in his opening or reply brief in the court of appeals.

Indeed, Petitioner had the opportunity to explore this issue as early as the first evidentiary hearing. Officer Bammert testified that he believed Petitioner's computer "was a WiFi system" and that Petitioner could access the internet from that computer. (State's Lodging A-3 at 16-17.) Though in the context of his testimony it appears that Officer Bammert held this belief at the time he seized the computer, it could be argued—but was not—that his knowledge was based on a later examination of the computer. Petitioner could have—but did not—question Officer Bammert regarding what he believed about the computer's capability to access the internet at the time the computer was seized. Petitioner did ask Officer Bammert why he seized the computer (*id*. at 35), but did not follow up with any other questions.

Petitioner raises much alarm at the alleged "total absence of careful and thorough analysis of the facts" from the decision of the Idaho Court of Appeals. (Reply, Dkt. 17, at 18.) But as set forth above, that court decided every argument Petitioner submitted to it. It did not address the seizure of the documents, or the delay between the seizure and search of the computer, presumably because Petitioner did not raise those questions in his opening or reply brief. The issue is not whether Petitioner availed himself of every opportunity to argue his Fourth Amendment claim, nor whether Petitioner fully developed

**MEMORANDUM DECISION AND ORDER  24**

the facts at the multiple evidentiary hearings held in the trial court. It is whether he *could* have done so, and he most certainly could.

Although Petitioner scolds the Idaho Court of Appeals for subjecting him to a "procedural ambush" by affirming the district court based on the automobile exception (Reply at 17), there is nothing fundamentally unfair about affirming a denial of a motion to suppress on a different ground than that advanced in the trial court, so long as that basis is supported by the record. Federal appellate courts do so frequently. *See, e.g., United States v. Ruiz*, 428 F.3d 877, 880 (9th Cir. 2005) ("We may affirm a district court's denial of a motion to suppress on any basis supported in the record."). Further, Petitioner's claim that he was procedurally ambushed by the state court of appeals is disingenuous, for several reasons. First, the government offered several alternative grounds for affirmance in its answering brief on appeal, and Petitioner had the chance to challenge those arguments in his reply brief. Second, Petitioner took the opportunity at oral argument to, in his words, "vigorously argue[] that the facts crucial to the probable cause issue had never been addressed by the trial court." (State's Lodging B-7 at 4.) And finally, Idaho appellate courts have a specific procedural rule in the Fourth Amendment context—established well before Petitioner's appeal—that a search may be upheld under the Fourth Amendment on an alternative ground, even if neither the prosecutor nor the trial court relied on that ground.

In *State v. Bower*, 21 P.3d 491, 494 (Idaho Ct. App. 2001), the defendant made the

**MEMORANDUM DECISION AND ORDER  25**

same argument to the Idaho Court of Appeals as Petitioner: that the search could not be

upheld based on a ground different from that asserted by the prosecutor in the trial court.

The defendant contended he was "prejudiced because he was not put on notice of the

need to present evidence pertinent to this issue." *Id.* The court of appeals rejected that

argument:

> We find Bower's position to be untenable for a number
> of reasons. First, the overarching "issue" presented both to the
> trial court and on appeal was raised by Bower's motion, not
> by the State. That issue is whether the officers' entry into the
> motel room violated the Fourth Amendment. Second, the
> State was not obligated to notify Bower in advance of the
> hearing of each of the warrant exceptions the State deemed
> applicable nor to give him advance notice of all its legal
> arguments respecting those exceptions. When a defendant has
> demonstrated that a warrantless search or seizure occurred, it
> becomes the State's burden to prove through *presentation of*
> *evidence* that an exception to the warrant requirement applied.
> It then becomes the judge's duty to determine whether the
> proven facts demonstrate that the search met the
> reasonableness standard of the Fourth Amendment. *While*
> *prosecutors may customarily address some written or oral*
> *argument to the court presenting the State's legal theories as*
> *to why the search or seizure was lawful, the prosecutor is not*
> *obligated to do so; nor is the trial court precluded from ruling*
> *that the evidence was lawfully acquired on a theory different*
> *from that advanced by the prosecutor.* We have held that a
> court's analysis of the constitutionality of a search is not
> circumscribed by the intent or belief of the officer at the scene
> regarding the reason or justification for the search. Similarly,
> *the court is not limited by the prosecutor's argument or the*
> *absence thereof.* The lawfulness of a search is to be
> determined by the court, based upon an objective assessment
> of the circumstances which confronted the officer at the time
> of the search.

**MEMORANDUM DECISION AND ORDER  26**

*Id.* at 494-95 (internal quotation marks, citations, and footnote omitted) (second and third emphases added). Thus, Petitioner cannot be heard to complain that he was sandbagged either by the government's alternative arguments on appeal or the state court's acceptance of one of those arguments.

Petitioner laments that the trial court "did not find any facts as a predicate" to its order denying the supplemental motion to suppress the computer and documents and that "the state appellate court merely repeated the facts that the trial court had assumed in its order." (Pet. and Memo. at 21; Reply at 11.) Strangely, Petitioner includes this criticism even though the trial court relied on *Petitioner's* version of the facts. (Pet. at 21-22). Petitioner goes on to state that he "has no problem with the [factual] portion of the state appellate opinion," but "makes this point to highlight . . . *the absence of such findings that is at the core of the habeas petition*." (Reply at 11) (emphasis added). But the court of appeals relied on admittedly undisputed facts to determine that there was probable cause to search the computer:

> [Petitioner] admitted to officers that he was sitting in his car working on his computer around the same time that the victim reported receiving e-mails directing her to a portable restroom in the park. The e-mails triggered the investigation, and were the very means by which the victim was lured to the park in the first place. The suspicious circumstances of this case—[Petitioner's] dress, demeanor, and gun—coupled with [Petitioner's] admission to recently working on his laptop computer, created a direct nexus between the suspicious e-mails and [Petitioner's] computer.

(*Id*. at 7.) Petitioner did not, and does not, dispute any of these facts.

**MEMORANDUM DECISION AND ORDER  27**

Finally, even if the state courts had made no express findings, that would still not be enough to overcome the *Stone* bar. "All *Stone v. Powell* requires is the initial opportunity for a fair hearing. Such an opportunity for a fair hearing forecloses this court's inquiry, upon habeas corpus petition, into the trial court's subsequent course of action, including *whether or not the trial court has made express findings of fact*." *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986) (emphasis added) (internal citations omitted).

**3.    *Stone* Survived the Passage of AEDPA**

Petitioner argues that even if he received a full and fair opportunity to litigate his Fourth Amendment claim in state court, this Court should still review that claim because, after AEDPA, *Stone v. Powell* is no longer good law. For this argument, Petitioner cites *Carlson v. Ferguson*, 9 F. Supp. 2d 654, 656 (S.D.W.Va. 1998), in which the District Court for the Southern District of West Virginia concluded that AEDPA's two-tiered unreasonableness approach "replace[d] the full and fair opportunity test" of *Stone*. The *Carlson* court based its decision on the language of § 28 U.S.C. § 2254(d), which states that a habeas petition "'shall not be granted with respect to *any* claim that was *adjudicated on the merits* in [state court].'" *Id.* at 657 (quoting 28 U.S.C. § 2254(d)) (alteration in original).

The Court rejects Petitioner's argument that *Stone* is no longer applicable. The two circuit courts to address the issue have both held that the *Stone* doctrine survives AEDPA

**MEMORANDUM DECISION AND ORDER  28**

and that the full and fair opportunity test still applies. *See Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002) ("[T]he Antiterrorism and Effective Death Penalty Act does not affect *Stone*. The AEDPA's changes to § 2254(d) apply only to cases within the scope of § 2254(a), which was not amended in 1996, and *Stone* is based on an interpretation of § 2254(a) that treats inaccurate administration of the exclusionary rule as outside the scope of that statute."); *Herrera v. Lemaster*, 225 F.3d 1176, 1178 n.2 (10th Cir. 2000) ("We are not persuaded . . . that by enacting AEDPA Congress intended to expand in any way a habeas petitioner's right to overturn a state court decision.").

Moreover, the Supreme Court has continued to cite *Stone* with approval after the passage of AEDPA. *See Williams v. Taylor*, 529 U.S. 362, 375 (2000) (citing *Stone* for the proposition that "[i]t is, of course, well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas.") Though the *Williams* Court was not deciding the issue of whether *Stone* survived AEDPA, federal courts "afford 'considered dicta from the Supreme Court . . . a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold.'" *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1246 (9th Cir. 2013) (omission in original) (quoting *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc)).

Further supporting this Court's conclusion that *Stone* still applies to Fourth Amendment claims in federal habeas proceedings is that the Supreme Court has

**MEMORANDUM DECISION AND ORDER  29**

determined, in other contexts, that AEDPA leaves room for judicially-created doctrines. In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1932 (2013), the Court held that a sufficient showing of actual innocence can cure an untimely habeas petition, notwithstanding that AEDPA's one-year statute of limitation has no explicit exception. The principle that "a prisoner otherwise subject to defenses of abusive or successive use of the writ of habeas corpus may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence" was established by the courts, yet survived the passage of AEDPA. *Id.* at 1931 (internal quotation marks and alteration omitted).

Finally, the Court agrees with *Herrera*'s reasoning that Congress could not have intended for AEDPA—the purpose of which was to *restrict* a habeas petitioner's ability to obtain federal review of constitutional claims—to *expand* a petitioner's ability to obtain federal review of a fairly litigated Fourth Amendment claim. *See* 225 F.3d at 1178 n.2.

For all of these reasons, the Court concludes that the rule of *Stone v. Powell* was not affected by AEDPA.

## CONCLUSION

The Constitution is not offended by the refusal of a federal habeas court to review a Fourth Amendment determination of a state court so long as the petitioner had a full and fair opportunity to raise his arguments in state court. Here, Petitioner had many chances to challenge the constitutionality of the search and seizure of the computer and the

**MEMORANDUM DECISION AND ORDER  30**

documents. The trial court allowed Petitioner to supplement his motion to suppress by arguing that probable cause did not exist to seize the computer. Petitioner took this opportunity, adding an argument that the seizure of the documents was unconstitutional as well. Petitioner disclaimed any argument that the search of the computer's hard drives was unconstitutional. At more than one evidentiary hearing, Petitioner could have developed the "missing" facts he now contends are critical to his Fourth Amendment claim. He did not.

On direct appeal, once the government argued for affirmance based on the automobile exception, Petitioner had the opportunity to set forth his opposing position in his reply brief. Petitioner took this opportunity with respect to the seizure of the computer, but he did not challenge the seizure of the documents or the delay between the seizure and the search of the computer. He had another opportunity to litigate his claim when he petitioned the Idaho Court of Appeals for rehearing, and yet another when he petitioned the Idaho Supreme Court for review. The fact that those courts denied the petitions without analysis does not presume as a matter of law that they failed to consider Petitioner's arguments. *See Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).

Petitioner had ample opportunities to litigate his Fourth Amendment claim fully and fairly in the state courts. The fact that he failed to do so does not lead to the legal conclusion that he should be successful in this action. Therefore, the Court will dismiss Newman's Petition as asserting a non-cognizable claim under *Stone v. Powell*.

**MEMORANDUM DECISION AND ORDER  31**

## ORDER

**IT IS ORDERED:**

1.      The Petition for Writ of Habeas Corpus (Dkt. 1) is DISMISSED with

prejudice.

2.      The Court does not find its resolution of this habeas matter to be reasonably

debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

§ 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner

files a timely notice of appeal, the Clerk of Court shall forward a copy of

the notice of appeal, together with this Order, to the United States Court of

Appeals for the Ninth Circuit. Petitioner may seek a certificate of

appealability from the Ninth Circuit by filing a request in that court.



DATED:  **November 27, 2013**.

Honorable Larry M. Boyle
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER  32**